UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER RUSSOMANNO,

                    Plaintiff,

      -against-

ELIZABETH MURPHY,

                  Defendant.

09 Civ. 8804 (RJH)

CHRISTOPHER RUSSOMANNO,

                    Plaintiff,

      -against-

CLAUDE STEPHAN,

                  Defendant.

09 Civ. 8806 (RJH)

**<ins>MEMORANDUM OPINION AND ORDER</ins>**

Richard J. Holwell, District Judge:

      Plaintiff *pro se* Christopher Russomanno ("Russomanno") commenced the above-captioned actions in New York Supreme Court, County of New York on September 2, 2009, alleging discrimination based on his national origin[1] and retaliation against him by his supervisor at his former workplace, Natixis Capital Markets, Inc. ("Natixis").  On April 30, 2010, defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), or in the alternative, to consolidate the above-captioned *Murphy* and *Stephan* actions.  Out of an abundance of caution,

---

[1] To wit, American.

1

the Court converted the motions to motions for summary judgment on the issue of whether Russomanno's claims were barred by a letter agreement and general release he signed.  For the reasons that follow, the converted motions are GRANTED.

## BACKGROUND

For the purposes of these motions, the following facts are taken as true.

Plaintiff began his employment at Natixis on November 13, 2006.  ("Events Timeline" attached to *Stephan* Complaint ("Timeline") at 1.)  The complaint alleges that over the next two years, defendant Claude Stephan ("Stephan"), Russomanno's supervisor, engaged in various acts of harassment against Russomanno.  For example, it alleges that Stephan used a "threatening and intimidating tone" in asking Russomanno why he left work at 5 p.m., publicly berated him for failing to access inaccessible information, made "inappropriate comments" about the way Russomanno sat during meetings, "scream[ed] and yell[ed] and move[d] toward [plaintiff] in a physically threatening manner" for his failure to have a written agenda for a meeting, and "[i]n a threatening manner" told Russommanno to resign when he complained about unreasonable workload expectations.  (Timeline at 1-2.)  The complaint also alleges that Stephan, a French citizen, made several comments biased against Americans, remarking that Russomanno "and Americans in general are financially illiterate for leasing cars" and making jokes about "the weight, appearance and intelligence of American managers."  (*See* Timeline at 2, 4; *Murphy* Compl. ¶ 3.)

Beginning in 2008, Russomanno sought to transfer to another department, but was denied on the grounds that no internal transfers within Natixis were allowed.  (*See* Timeline at 2.)  In July 2008, Russomanno complained to Natixis's Human Resources department about Stephan's "harassing and discriminatory behavior."  (*Id.* at 2.)  On August 4, 2008, Stephan sent

Russomanno a letter advising him that if his work performance did not improve, his job would be in jeopardy and also sent an e-mail to Human Resources requiring Russomanno to provide a doctor's note for any sick days he took in the future, allegedly in retaliation for Russomanno's complaint to Human Resources.  (*See id.* at 2-3.)

Russomanno met with the head of the Human Resources department, defendant Elizabeth Murphy ("Murphy") in December 2008, and complained about Stephan's discriminatory comments.  (*Murphy* Compl. ¶ 3.)  Murphy informed him that he would be allowed to transfer to a new department if Natixis and Russomanno could reach a mutual agreement.  (Timeline at 4.) Russomanno indicated he would not accept a transfer to the Surveillance or Operations departments, but nevertheless was given opportunities to interview in only those departments. (*Id.*)  Eventually, Russomanno was terminated from the company, but managed to negotiate Natixis's original offer of four months' severance pay up to six months' worth.  (*Id.* at 5-6.) Russomanno accepted the company's offer and his employment was terminated, effective February 27, 2009.  (*Id.* at 6.)

The conditions of Russomanno's departure from the company were memorialized in a March 10, 2009 letter agreement and general release (the "Agreement") that Russomanno executed on March 13, 2009.  (*See* Friedfel Decl. Ex. 2.)[2]  Among other things, the Agreement contained language indicating that Russomanno was releasing any claims he had against Natixis, and provided:

> In consideration of the payments and benefits provided under this Agreement, you forever waive and release the Company [Natixis] (and any of its or their parent corporations, successors, subsidiaries, divisions, affiliates directors, officers, agents, and employees), from any and all claims, demands, causes of action, fees and liabilities of any kind whatsoever, whether known or unknown, by reason of

---

[2] There are actually two Friedfel Declarations, one in the *Murphy* case and one in the *Stephan* case.  Exhibit 2 is the Agreement in both declarations.

3

any actual or alleged act, omission, transaction, practice, conduct, statement, occurrence, or other matter up to and including the date you sign this Agreement.

This includes, but is not limited to: (i) any claim under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, and the Family and Medical Leave Act, all as amended; (ii) any claim under the New York State Human Rights Law or the New York City Administrative Code; (iii) any other claim (whether based on federal, state or local law, statutory or decisional) relating to or arising out of your employment or the terms and conditions of such employment, including but not limited to breach of contract (express or implied), fraud, wrongful or constructive discharge, retaliatory discharge, emotional distress or compensatory or punitive damages; and (iv) any claim for attorneys' fees, costs, disbursements and/or the like.

(Friedfel Decl. Ex. 2 ¶ 4(a).)  By signing the Agreement, Russomanno acknowledged that he had been advised to consult independent legal counsel before signing the Agreement, that he had a reasonable opportunity to consider the terms and conditions of the Agreement, that he carefully read the Agreement in its entirety, that he fully understood the Agreement, and that he was signing the Agreement voluntarily and of his own free will.  (*Id.* ¶ 12.)  The Agreement gave Russomanno seven days to accept it.  (*See id.* ¶ 13.)  Russomanno signed the Agreement on March 13, 2009, three days after he received it.  (*Id.* at 4; *see* Pl.'s Opp'n ¶ 2 (noting that plaintiff received the Agreement on March 10, 2009).)

In two complaints dated September 2, 2009, Russomanno commenced actions against Murphy and Stephan in New York Supreme Court.  On October 16, 2009, both cases were removed to this Court.  Both defendants filed the motions to dismiss addressed in this opinion on April 30, 2010.  On December 2, 2010, the Court, out of an abundance of caution, converted the motions to dismiss to motions for summary judgment on the limited issue of whether Russomanno's claims were barred by the Agreement so that it could consider the Agreement without cavil.  (*See Murphy*, ECF No. 16; *Stephan*, ECF No. 20.)  The Court gave plaintiff until

January 14, 2011 to submit any additional materials responsive to the conversion to summary

judgment.  He chose not to do so.  Defendants also submitted no additional materials.

**DISCUSSION**

**I.   Standard of Review**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court accepts

as true all factual allegations in the complaint and draws all reasonable inferences in the

plaintiff's favor.  *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir.

2009).  The complaint's allegations, however, "must be enough to raise a right of relief above the

speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Only a "plausible

claim for relief survives a motion to dismiss."  *LaFaro v. New York Cardiothoracic Group,*

*PLLC*, 570 F.3d 471, 476 (2d Cir. 2009).  Thus courts are "not bound to accept as true a legal

conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949-50 (2009) (internal quotation marks omitted).

A district court is limited in the material it can consider in deciding a Rule 12(b)(6)

motion to dismiss.  First, it may consider assertions made within "the four corners of the

complaint itself."  *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).  Second, it can

consider "any written instrument attached to [the complaint] as an exhibit or any statements or

documents incorporated in [the complaint] by reference."  *Chambers v. Time Warner, Inc.*, 282

F.3d 147, 152 (2d Cir. 2002).  Third, "[e]ven where a document is not incorporated by reference,

the court may nevertheless consider it where the complaint 'relies heavily upon its terms and

effect,' which renders the document 'integral' to the complaint."  *Id.* at 153.  The Second Circuit

has emphasized that "a plaintiff's *reliance* on the terms and effect of a document in drafting the

complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).  Finally, a court may consider "matters of which judicial notice may be taken."  *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

When a district court is presented with materials outside the pleadings, it can either "exclude[] the extrinsic documents" or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by [Fed. R. Civ. P.] 56."  *Chambers*, 282 F.3d at 154; *see* Fed. R. Civ. P. 12(b).  The Court has converted the motion to one for summary judgment on the issue of whether the Agreement bars Russomanno's claims.

## II.  Summary Judgment Standard

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party."  *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party must demonstrate that no genuine issue exists as to any material fact.  *Celotex*, 477 U.S. at 323–25.  As to an issue on which the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325 (rejecting a construction of Rule 56(c) that

6

would require the party moving for summary judgment to produce evidence affirmatively establishing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof).

If the moving party makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322–23.  In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256–57; *Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

### III. The Agreement Bars Russomanno's Claims

There is no dispute as to whether the Agreement covers Russomanno's claims.  The language of the Agreement reads as a general release.  By signing the Agreement, Russomanno released all claims against Natixis and its employees.  It is undisputed that this includes Stephan and Murphy.  The only question for consideration, then, is whether the Agreement is valid and enforceable.

"A plaintiff may waive a statutory claim for discrimination as long as it is done knowingly and voluntarily."  *Shain v. Center for Jewish History, Inc.*, No. 04 Civ. 1762 (NRB), 2006 WL 3549318, at *3 (S.D.N.Y. Dec. 7, 2006).  A court in the Second Circuit employs "a 'totality of the circumstances' test to determine whether a release of Title VII claims is knowing and voluntary."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998).  Factors relevant to this inquiry include:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role

7

of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* These factors weigh in favor of defendants. Plaintiff had seven days consider the Agreement. *See Shain*, 2006 WL 3549318, at *4 (holding that several hours was "more than adequate to fully read and understand the brief and straightforward language of the release"). Plaintiff had a significant role in deciding the terms of the agreement, as he negotiated for higher severance pay. (Timeline at 5-6; *see* Friedfel Decl. Ex. 2 ¶ 2(a) (noting the amount of severance pay).) The Agreement is clear in its language, and there is no claim that Russomanno misunderstood it. The Agreement also provided benefits beyond those to which Russomanno might otherwise have been entitled. (Friedfel Decl. Ex. 2 ¶ 2.) The Agreement also urged Russomanno to seek independent legal advice before signing it.

Nevertheless, Russomanno argues that he was under economic and emotional duress when he signed the Agreement. (Def.'s Opp'n ¶ 1.)[3] In support of this argument, he asserts that he was undergoing psychological treatment at the time of the Agreement and that he was "left unprepared to pay mortgage payment among other bills" when he was terminated and therefore he "had no other choice, [sic] but to sign the agreement."

Under New York law, "a general release, like any contract, may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will." *Fourth Ocean Putnam Corp. v. Suburbia Federal Savings & Loan Ass'n*, 124 A.D.2d 550, 552 (N.Y. App. Div. 1986); *see also Berman v. Parco*, No. 96 CIV. 0375

---

[3] Plaintiff submitted two nearly identical four-paragraph oppositions in the *Murphy* and *Stephan* actions.

(KMW)(AJP), 1996 WL 465749, at *7 (S.D.N.Y. Aug. 15, 1996) (setting out the elements of economic duress as obtaining a release "(1) by means of a wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative").  Plaintiff here has not even alleged any threat, let alone a wrongful one, on the part of Natixis or any defendant.  Indeed, the Agreement gave him time to consider whether or not to sign the Agreement and urged him to obtain independent legal advice before signing it.   Instead, Russomanno asserts only that his circumstances were such that he felt that he had to sign the Agreement.  As such, no economic duress exists in this case.

    As for "emotional duress," plaintiff cites no case holding that such a defense against exists under New York law.  *Cf. Berman*, 1996 WL 465749, at *7 n.4 (expressing skepticism about the existence of "emotional duress" under New York law).  Even if "emotional duress" exists under New York law, "[a] valid claim of duress has two components, (1) threats of an unlawful act by one party which (2) compels performance by the other party of an act which it had a legal right to abstain from performing."  *Chase Manhattan Bank v. State of New York*, 13 A.D.3d 873, 874 (N.Y. App. Div. 2004). Again, Russomanno has not even alleged that any threat of an unlawful act existed with respect to the signing of the Agreement, much less that that threat compelled him to sign the Agreement.  Accordingly, no "emotional duress" exists in this case either.

    The Court therefore finds that the Agreement is a voluntary and knowing waiver of Russomanno's claims in this case.  No genuine issue of material fact exists on this point.  His claims, therefore, must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' converted motions for summary judgment **(09-cv-8804: [13], 09-cv-8806: [16])** are GRANTED.  Russomanno's claims in these cases are dismissed with prejudice, and the Clerk of the Court is requested to close these cases.


SO ORDERED.

Dated: New York, New York
      February **16** , 2011

                                   Richard J. Holwell
                               United States District Judge